IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BAKYT BEKBOEV                                                    PETITIONER

V.                                              Cause No. 5:26-cv-00037-DCB-BWR

RAFAEL VERGARA,                                                 RESPONDENT
*Warden, Adams County Correctional
Center*

<u>REPORT AND RECOMMENDATION</u>

Now before the Court is an Emergency Motion for Temporary Restraining Order and Preliminary Injunction [4], filed through counsel by 28 U.S.C. § 2241 Petitioner Bakyt Bekboev, who is an immigration detainee detained at Adams County Correctional Center in Natchez, Mississippi. Petitioner has been detained since January 8, 2026. Petitioner claims that his detention is "unlawful and indefinite." Pet. [1] at 1.

The Emergency Motion for Temporary Restraining Order [4] should be denied because Petitioner cannot show that his claims have a substantial likelihood of success on the merits. Petitioner's statutory arguments are currently foreclosed by *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 498 (5th Cir. 2026). Petitioner's due process arguments do not address the Supreme Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore v. Kim,* 538 U.S. 510, 526 (2003).

### I. BACKGROUND

Petitioner is a native and citizen of Kyrgyzstan who arrived in the United States on August 4, 2023, at the San Ysidro Port of Entry in California without

"possession of a valid immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act" (INA). Department of Homeland Security (DHS) Notice to Appear [1-4] at 2. That day, DHS charged Petitioner as removable based on his violation of § 212(a)(7)(i)(I) of the INA. *Id.* Petitioner asserts that he was "processed as a parole applicant," and "granted . . . parole into the United States pursuant to INA § 212(a)(7)(A)(i)(I) for one year." Pet. [1] at 5. Petitioner has no criminal record. *Id.* at 3. He "obtained an Employment Authorization Document ('work permit') in or around November 2023[.]" *Id.* at 5-6. On July 30, 2024, Petitioner filed an application for asylum and withholding of removal, which remains pending. *Id.* at 5.

Petitioner submits that his immigration case "was waiting in front of New York Immigration Court for a master hearing on February 11, 2026." *Id.* at 6. On January 8, 2026, U.S. Immigration and Customs Enforcement (ICE) detained Petitioner at around 5:00 a.m. "at a rest area in Minnesota while he was resting in his truck. ICE officers did not question him or provide any papers or notices and arrested and transported him to a detention facility without further explanation." *Id.* Petitioner acknowledges that his parole was for one year. *Id.* at 5. "[O]ne and a half years after he was paroled into the country," ICE detained him. *Id.* Petitioner claims "ICE either deemed Petitioner's one-year parole to have expired or terminated his parole without notice, thus stripping him of his lawful status and liberty without process." Pet'r Mot. [4] at 4.

Petitioner filed his § 2241 Petition on January 30, 2026, and Motion for Temporary Restraining Order on February 6, 2026. The Motion for Temporary Restraining Order references documents that Petitioner did not attach. Petitioner asks the Court to "declare that any detention under § 1225 is unlawful under the facts presented and that he is entitled to the protections of 8 U.S.C. § 1226(a), including eligibility for bond." Pet'r Mot. [4] at 3. Petitioner asserts that "[e]ven assuming that § 1225(b) applied, Petitioner's prolonged detention without any hearing or individualized determination violates the Fifth Amendment's Due Process Clause." *Id.* at 2. Petitioner submits that "[b]ecause immigration court backlogs are extensive, there is ***no clear end in sight*** for Petitioner's removal proceedings; his asylum case could take ***many months or even years*** to resolve. Thus, absent this Court's intervention, Mr. Bekboev faces the very real prospect of ***prolonged, indefinite incarceration*** despite ***never*** being convicted of any crime and despite his demonstrated compliance." *Id.* at 5 (emphasis in original).

## II. DISCUSSION

A preliminary injunction is "an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). An applicant for either a temporary restraining order or a preliminary injunction has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threaten to the movant outweighs any damage the injunction

3

might cause to the opponent; and (4) granting the injunction will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987). "The decision to grant or deny a preliminary injunction lies within the discretion of the district court[.]" *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984). If a movant fails to show a substantial likelihood of success on the merits, "no additional analysis is required," as that alone is sufficient to justify a denial of a preliminary injunction. *Perez v. City of San Antonio,* 163 F.4th 110, 134 (5th Cir. 2025).

A.      Petitioner's Statutory Arguments are Currently Foreclosed

Petitioner's statutory arguments are currently foreclosed by the Court of Appeals for the Fifth Circuit's February 3, 2026 decision in *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026). Petitioner filed his Motion for Temporary Restraining Order on February 6, 2026 and Rebuttal on March 11, 2026. In neither did he mention *Buenrostro-Mendez,* which binds this Court.

*Buenrostro-Mendez* explains that Petitioner was detained after "the current Presidential Administration began detaining illegal alien residents . . . for removal proceedings without bond, rather than bonding and releasing them." *Buenrostro-Mendez,* 166 F.4th at 498:

> From 1997 to 2025, successive presidential administrations and many immigration judges treated unadmitted aliens as being subject to § 1226(a) rather than § 1225(b)(2). But, in July 2025, the Board of Immigration Appeals (BIA) decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, which reconsidered the statutory framework and concluded that aliens who enter the United States without inspection and admission are subject to mandatory detention under § 1225(b)(2). In reaching that conclusion, the BIA explained that "[r]emaining in the

4

> United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Hurtado,* 29 I. & N. Dec. at 228. Accordingly, unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States. *Id.* at 225.

*Id.* at 500.

*Buenrostro-Mendez* held that an "alien present within the United States who has not been admitted" by lawful means, *see* 8 U.S.C. §§ 1225(a)(1), 1101(a)(13)(A), is an "applicant for admission" deemed to be "seeking admission," and unless the alien shows his or herself to be "clearly and beyond a doubt entitled to be admitted," he or she "shall be detained for a proceeding" to determine inadmissibility or deportability. *Id.* at 498, 502-08. According to *Buenrostro-Mendez,* Petitioner is lawfully detained under § 1225(b)(2) and not eligible for a bond hearing. The mandate in *Buenrostro-Mendez* has not issued, and according to the publicly available docket, the appellees have until March 23, 2026 to file a petition for rehearing/petition for rehearing en banc.

B.    Petitioner Has Not Demonstrated that His Due Process Arguments Have a Substantial Likelihood of Success on the Merits

Petitioner relies on *Zadvydas v. Davis,* 533 U.S. 678 (2001) but does not address *Demore v. Kim,* 538 U.S. 510 (2003). In *Zadvydas,* the Supreme Court considered post-removal-period detention under 8 U.S.C. § 1231(a)(6), as opposed to detention pending a determination of removability, which is what the Petition and Temporary Restraining Order challenge. *Demore* addressed detention pending a

5

determination of removability, albeit under 8 U.S.C. § 1226(c) and not 8 U.S.C. § 1225(b)(2). Section 1226(c) requires detention of deportable and inadmissible aliens without bond eligibility where they have "been convicted of one of a specified set of crimes." 538 U.S. at 513. Petitioner has not been convicted of a crime, but *Demore* still must be addressed and its reasoning overcome.

In *Demore,* the Supreme Court distinguished *Zadvydas,* observing that "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" while detention under 8 U.S.C. § 1226(c), pending a determination of removability, "is of a much shorter duration." *Demore,* 538 U.S. at 528. The removal period in *Zadvydas* "ha[d] no obvious termination point" "unlike detention pending a determination of removability." *Id.* at 529 (relying on *Zadvydas,* 533 U.S. at 528-529). The Supreme Court denied the due process claim in *Demore* and held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 530. As here, the petitioner in *Demore* argued that bond hearings were effective and not burdensome, and the Supreme Court responded that "[w]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. *Demore* explained that since *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976), "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522.

The Supreme Court in *Jennings v. Rodriguez* found "*Zavydas's* reasoning . . .

6

particularly inapt" in the context of § 1225(b) detention. 583 U.S. 281, 299 (2018).

Petitioner is detained under 8 U.S.C. § 1225(b). "The issue in *Jennings* was whether

the constitutional avoidance canon required the government to grant periodic bond

hearings to aliens facing prolonged detention under [8 U.S.C.] § 1225 and § 1226."

*Buenrostro-Mendez,* 166 F.4th at 505. *Jennings* found that aliens lacked a statutory

right to bond hearings under §1225(b)(1) and (b)(2), concluding that

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings,* 583 U.S. at 297.

The Supreme Court in *Jennings* rejected the argument that *Zadvydas*

"essentially grant[ed] a license to graft a time limit onto the text of § 1225(b)." *Id.* at

298. The *Jennings* Court observed that '§§ 1225(b)(1) and (b)(2) do not use the word

'may.' Instead, they unequivocally mandate that aliens falling within their scope

'shall' be detained." *Id.* at 300. The Supreme Court reasoned that Sections 1225(b)(1)

and (b)(2) make an "express exception to detention," temporary parole, which "implies

that there are no *other* circumstances under which aliens detained under § 1225(b)

may be released." *Id.* (emphasis in original).

While *Zadvydas* found that "[a] statute permitting indefinite detention of an

alien would raise a serious constitutional problem," 533 U.S. at 690, Petitioner is challenging detention under 8 U.S.C. of § 1225(b), and *Jennings* found that detention under § 1225(b) is not indefinite, *Jennings,* 583 U.S. at 297. Petitioner is being detained "for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Part of the delay in Petitioner's application for asylum being resolved is Petitioner's delay in applying for asylum. Petitioner entered the United States on August 4, 2023, was granted one-year of parole, but did not apply for asylum until July 30, 2024 – 361 days after he entered the United States. Section § 1225(b) does not impose a six-month detention limitation, nor does it require a bond hearing. *Jennings,* 583 U.S. at 297-301.

Petitioner tells the Court that *Mathews v. Eldridge's* three-part-balancing test applies to his procedural due process claim, but the Supreme Court, when confronted with due process challenges to immigration detention statutes in *Zadvydas* and *Demore,* did not cite or expressly apply *Mathews v. Eldridge*. The Supreme Court "ha[s] never viewed *Mathews* [*v. Eldridge*] as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Petitioner has not explained why *Mathews v. Eldridge's* test applies here when it was not used in *Zadydas* or *Demore*.

### III. RECOMMENDATION

It is recommended that Petitioner's Motion for Temporary Restraining Order [4] be denied because Petitioner has not shown that his statutory or due process

8

claims have a substantial likelihood of success on the merits.

## IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy of the objections. *Id.* The district judge will determine de novo any part of the Report and Recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the Report and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1).

**SIGNED,** this the 19th day of March 2026.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

9